TIMOTHY D SHEPPARD

Plaintiff

v     Civil Action No. RDB-19-255

LT. HANCE PEPPER,
ASSISTANT WARDEN WALTER WEST,

Defendants

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff Timothy D. Sheppard alleges in his Complaint filed pursuant to 42 U.S.C. §1983 that he was unlawfully removed from his prison job and his security classification[1] was changed. Defendants, Lt. Hance Pepper and Assistant Warden Walter West filed a Motion to Dismiss or for Summary Judgment in Response to the Complaint with verified exhibits. ECF 10, ECF 10-1, ECF 10-2. Sheppard filed a motion titled "Motion Requesting the Denial of the Defendants' Motion for Summary Judgment." ECF 14. Defendants filed a Response to Sheppard's motion. ECF 15. After reviewing the submissions, this Court determines no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendants' Motion is GRANTED. Plaintiff's Motion is DENIED.

### BACKGROUND

In his Complaint, Sheppard claims his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendment were violated when he was reclassified and lost his prison job before he was charged with prison rule violations. As redress he seeks $25,000 in damages, return to his prison job, back pay, award of any lost diminution credits, and an order to change "the process that you can't be

---

[1] Sheppard does not explain the change allegedly made to his security classification.

reclassified until convicted of a ticket and not before." ECF 1 at 4. Notably, Sheppard does not allege, nor are there facts in the record to show that Pepper was involved in the loss of Sheppard's prison job or reclassification.

The only facts Sheppard alleges against Pepper concern his investigation and issuance of the Notice of Rule Violation and are summarized as follows. On June 21, 2018, Sheppard, who is incarcerated at Eastern Correction Institution ("ECI"), failed to report for his job at Maryland Correctional Enterprises ("MCE"). On that day a total of twenty-four inmates assigned to ECI's West MCE workshop did not report for work. ECF 10-2 at 2. Pepper investigated the absences. Sheppard claims Pepper was acting on a "direct order" from Assistant Warden West. ECF 1 at 4. Pepper interviewed all twenty-four inmates and they provided written statements. *Id.* at 9-32. Based on this information, Pepper concluded the inmates had orchestrated a planned work stoppage in response to a change in the recreation schedule. *Id.* at 2.[2]

Specifically, Pepper concluded that twenty-three of the twenty-four inmates did not provide a valid reason to take off from work on June 21, 2018. *Id.* at 29-32. Ten inmates, including Sheppard, stated they missed work because they were sick. Pepper found none of the ten had submitted a sick call slip. *Id.* at 4, 7, 8. Thirteen inmates missed work to make phone calls, for recreation time, or because they get three unexcused absences each month. *Id.* One inmate took off from work to celebrate the summer solstice, a religious holiday for Native Americans. *Id.*

Dan McGarity, plant manager of MCE West, states that "in 28 years I have never known that many inmates taking off sick on the same day. Before the end of the day we had heard that it was thought to be a protest, some even admitted it. ECF 10-2 at 4, 5. Only one inmate, Patrick O'Neill, received permission to take off time; he wanted to call to his lawyer. *Id.* Inmate Knight

---

[2] Sheppard initially sought to file a class action. ECF 1 at 4. This Court informed Sheppard that he may assert his own claims, but may not assert claims on behalf of other inmates. ECF 3.

2

stated he took off because his recreation was taken away and MCE workers want to stand together for their recreation time. *Id.* at 10. Inmate Eric Jones admitted that he chose not to go to work because he wanted the opportunity to speak up and represent the MCE workers. *Id.* at 11.

Sheppard did not report for work because he had a headache which he blamed on his high blood pressure. *Id.* at 17, 51. Sheppard later took his medication and the pressure was "okay" but "not up to par." *Id.* It was noted that Sheppard was one of several inmates seen in the recreation yard after he said he was sick. *Id.* at 6.

On July 8, 2018, Pepper issued a Notice of Rule Violation to Sheppard for violating Rule 402(c) (absence from or late reporting to an assigned location without authorization) and Rule 403(a) (providing false information). ECF 10-2 at 40, 47-48. Sheppard pleaded not guilty to both charges at his August 6, 2018 disciplinary hearing. He denied participating in the planned work stoppage and asserted that he had in fact filed a sick call slip on June 21, 2018, to be seen for hypertension. Sheppard introduced into evidence a copy of his sick call slip dated June 21, 2018. *Id.* at 41, 42, 43, 46. Sheppard asserted "Michelle" had picked up his sick call slip.[3] Officer Muncie, the institutional representative, stated sick call slips are gathered daily and date stamped when received. Hearing Officer Stephen Mack noted that Sheppard's sick call slip was date-stamped "five days later." *Id.* Nurse M. Richbark, whom Sheppard called as a witness, testified that Sheppard came for chronic care treatment [4] and turned in a sick call slip. Richarbark said "[t]hey put their own date on it and we stamp it as soon as we receive them." *Id.* at 42-43.

---

[3] No other information is provided about "Michelle."

[4] Sheppard's blood pressure was assessed on July 5, 2018. ECF 10-2 at 48. There is no evidence he was treated by medical providers on June 21, 2018.

3

The hearing officer did not find Sheppard's assertions credible. *Id.* at 44. Sheppard was found guilty of both rule violations and received a reprimand for violating Rule 402.[5] *Id.* at 34, 36, 38, 44, 45. Of import, no diminution credits were revoked. *Id.* at 45. On August 19, 2018, Sheppard appealed the hearing officer's decision and it was denied on August 22, 2018, by Warden Ricky Foxwell. *Id.* at 35.

After June 21, 2018, Sheppard was given a job in the Dietary Department and then reassigned to Special Housing Sanitation. *Id.* at 1, 52. Because of a subsequent disciplinary infraction,[6] he was removed from the Special Housing Sanitation job on January 20, 2019. Decl. of William Bailey, Acting Correctional Case Management Manager, ECF 10-2 ¶3.

## STANDARD OF REVIEW

### I. Motion to Dismiss

In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

---

[5] The nature or consequence of the reprimand are not stated in the record.

[6] No information is provided about the subsequent infraction.

4

A "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**II.     Motion for Summary Judgment**

A Motion for Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). A court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Sheppard was informed that he may file a Response in Opposition with exhibits, declarations, and attachments to oppose Defendants' dispositive motion. ECF 11. Sheppard has not done so. In his "Motion Requesting the Denial of the Defendants' Motion for Summary Judgment," he asks for discovery. ECF 14. First, he asks that inmate statements filed as exhibits by Defendants be notarized by the inmates. ECF 14 at 1. Sheppard seeks to submit interrogatories and to obtain information about unnamed inmates who allegedly dismissed their administrative remedies procedure requests related to the June 21, 2018 incident. Sheppard also wants

information about inmate job status and pay history. *Id.* He provides no explanation how this broadly described information is material to the issues in this case.

The local rules of this Court provide that discovery shall not begin prior to the filing of a scheduling order. Local Rule 104 (D. Md. 2018). No scheduling order has been issued in this case. Further, Defendants exhibits, including the submitted inmate statements, are verified by Acting Correctional Manager William Bailey who states in his declaration that all records submitted are true and accurate copies of the original records, that were made at or near the time of the recorded event, and made by an individual with personal knowledge of the event. Bailey Decl. ECF. 10-2 at 1 ¶3. Notably, Sheppard does not question the authenticity or veracity of Defendants' exhibits, nor did he avail himself of the opportunity to submit his own declaration or exhibits in opposition.

A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) aff'd, 266 F. App'x 274 (4th Cir. 2008). Sheppard does not specify how discovery will shed light on the issues presented here: whether he was unlawfully removed from his prison job and reclassified. *See Strag v. Bd. of Trustees*, 55 F.3d at 954 (noting that requests for discovery before consideration of summary judgment are properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment"). Because the information Sheppard seeks is not specific, is not essential to the opposition, and the information that is sought would not by itself create a genuine issue of material fact sufficient to defeat summary judgment as to Sheppard's claims, his Motion will be denied.

## DISCUSSION

Defendants argue Sheppard's claims should be dismissed or alternatively, they are entitled to summary judgment in their favor. They seek dismissal of his Fifth and Sixth Amendment claims against them for failure to state a claim. They additionally assert Eleventh Amendment and qualified immunity as affirmative defenses and claim Sheppard has not sufficiently demonstrated supervisory liability.

### I. ELEVENTH AMENDMENT

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Id.* at 100-01; *Alabama v. Pugh,* 438 U.S. 781, 782 (1978). Also barred by the Eleventh Amendment are claims brought against state employees in their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985).

The Eleventh Amendment to the United States Constitution prohibits any claim for damages against Lt. Pepper and Assistant Warden Walter West in their official capacity. *See Pennhurst State Sch. & Hosp.,* 465 U.S. 89, 99-101 (1984); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (internal citation omitted) *see also* Md. Code Ann., State Gov't § 12-101(a) (2015) (defining "state personnel"). Accordingly, all claims for damages against Defendants in their official capacity will be dismissed.

## II. FIFTH AMENDMENT CLAIM

As Defendants correctly note, the Fifth Amendment applies only to the actions of the federal government. Sheppard has however named no federal defendant. *See Holly v. Scott*, 434 F.3d 287, 291 (4th Cir. 2006) ("The first factor counseling hesitation is that defendants' actions are not 'fairly attributable' to the federal government.") (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). Consequently, Sheppard's Fifth Amendment claim will be dismissed for failure to state a claim upon which relief can be granted. To the extent Sheppard raises a due process claim under the Fourteenth Amendment, it is discussed below. *See infra* pp. 11-12

## III. SIXTH AMENDMENT CLAIM

The protections provided by the Sixth Amendment are limited to criminal prosecutions. *See Austin v. United States*, 509 U.S. 602, 607-08 (1993) (citation omitted). The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend VI.

As a prisoner, Sheppard retains rights under the Due Process Clause in the context of prison disciplinary proceedings, but those proceedings are not part of a criminal prosecution and the full array of rights due to a criminal defendant do not apply to the prison disciplinary process. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) citing *Morriseay v. Brewer*, 408 U.S. 471, 488 (1972). The protections of the Sixth Amendment therefore have no applicability here. Accordingly, Sheppard's claim of a violation of his rights under the Sixth Amendment will be dismissed for failure to state a claim.

9

## IV.  SUPERVISORY LIABILITY

In order to establish liability under § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976). Sheppard's sole mention of Assistant Warden West in the Complaint is his allegation that Pepper acted on a "direct order" from Assistant Warden West. ECF 1 at 4.

Vicarious liability under the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Supervisory liability instead requires a plaintiff to demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Thus, Sheppard must demonstrate a basis for Assistant Warden West's liability beyond his status as a supervisor in order to state a claim.

Defendants argue "nothing in the Complaint provides any basis for finding" that Assistant Warden West personally violated Sheppard's his federal rights. ECF 10-1 at 8. Viewing the facts in the light most favorable to Sheppard, even if Pepper was acting on a "direct order" from Assistant Warden West to investigate and later charge him (and others) with appropriate rule violations, a basis for West's supervisory liability is not supported by the allegations. Accordingly, the claims against Assistant Warden West will be dismissed.

## V. DUE PROCESS

Sheppard's remaining claim is that Pepper's actions, investigating his absence from work and issuing a Notice of Rule Violations violated his rights under the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." To succeed on a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Imprisonment is deprivation of a liberty interest, but it is constitutional, so long as the conviction is valid and "the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976), *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest).

Inmates generally have no liberty interest in obtaining a particular security classification, earning diminution credits, or holding a prison job. *See Sandin*, 515 U.S. at 484; *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (no constitutional right to a "particular security or custody status"); *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983) (convicted prisoners have no liberty interest in a particular security classification status). Further, prisoners do not have a constitutionally protected right to work while detained or incarcerated, to remain in a particular job once assigned, or to earn diminution credits at that job. *See Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F.2d 812, 812-13 (4th Cir. 1978); *Robinson-Bey v. Corcoran*, No. L-00-3452, 2001 WL 34799270, at *2 (D. Md. Apr. 12, 2011) ("There is no constitutional right to diminution credits."). Because correctional institutions must maintain order and discipline, matters regarding job assignments and classification designations are left to the discretion of prison officials. *See Slezak*, 21 F.3d at 594; *Sandin*, 515 U.S. at 482 (stating that

"federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). The expertise of prison officials in matters of security must be given due deference. *See Sandin*, 515 U.S. at 482.

Once earned, prisoners do have a protected liberty interest in keeping dimunition of confinement credits and must be afforded due process protections prior to their revocation. *See Wolff*, 418 U.S. at 556. However, the verified records demonstrate that Sheppard lost no diminution credits as a result of his rule infractions, nor did he suffer a deprivation of a constitutionally protected liberty interest when he was removed from his job, thus none of the actions taken in response to his failure to report to work were sufficient to trigger due process. Absent a protected liberty interest, Sheppard cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Viewing the evidence in the light most favorable to Sheppard, this Court finds there are no genuine issues of fact and Pepper is entitled to summary judgment as a matter of law and summary judgment will be entered in his favor as to this claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative for Summary Judgment IS GRANTED. Sheppard's claims against Assistant Warden West are DISMISSED with prejudice. Sheppard's claims against Pepper are dismissed with prejudice, except for the Fourteenth Amendment Due Process claim on which summary judgment is entered

in Pepper's favor.[7] Sheppard's "Motion Requesting the Denial of the Defendants' Motion for Summary Judgment" is DENIED. A separate Order follows.

_December 11, 2019_
Date

_/s/ Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[7] Because no constitutional violation is shown, this Court will not address Defendants' qualified immunity defense.

13